IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **RITA KEITH**, as Administrator of the Estate of Arthur Keith, Deceased, and Individually as the Natural Parent and Mother of Arthur Keith, 12800 Signet Avenue Cleveland, Ohio 44120<br><br>Plaintiff,<br><br>**JAMES GRIFFITHS**, in his Individual and Capacity as an Employee of the Cuyahoga Metropolitan Housing Authority c/o CMHA Legal Dept. 8120 Kinsman Road Cleveland, Ohio 44104<br><br>Defendant. | CASE.:<br><br>JUDGE:<br><br>JURY DEMAND ENDORSED HEREON |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff, RITA KEITH, as Administrator of the Estate of ARTHUR KEITH, Deceased, and Individually as the Natural Parent and Mother of ARTHUR KEITH, and hereby files this Complaint for Damages against Defendant JAMES GRIFFITHS, in his Individual Capacity, showing this Court as follows:

### INTRODUCTION

1.

This is an action for damages based on the wrongful death of Arthur Keith, who was shot and killed on November 13, 2020, by Defendant JAMES GRIFFITHS, an officer with the Cuyahoga Metropolitan Housing Authority Police Department. This incident occurred at the King Kennedy Housing Complex located in Cuyahoga County, Ohio.

## JURISDICTION AND VENUE

2.

This action is brought against Defendant JAMES GRIFFITHS pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the Constitution of the United States, as applied to the State of Ohio. This action also contains state law claims against Defendant JAMES GRIFFITHS based on statutes and common law of the State of Ohio.

3.

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, 1337, 1343, and 1391. This is an action seeking damages greater than seventy-five thousand dollars ($75,000.00) exclusive of costs, interest, and attorney's fees. Plaintiff also invokes the supplemental jurisdiction of the Court to decide any asserted statutory and common law torts.

## PARTIES

4.

Plaintiff, RITA KEITH ("Plaintiff") files this action as the mother of Arthur Keith, and as the Administrator of the Estate of Arthur Keith, who is deceased. Plaintiff and Mr. Keith are and were residents of Cuyahoga County, Ohio, during all times material to the subject incident.

5.

Defendant, JAMES GRIFFITHS ("Officer Griffiths") during all times relevant to this action, was and is a police officer employed by the CUYAHOGA METROPOLITAN HOUSING AUTHORITY, as an officer with the Cuyahoga Metropolitan Housing Authority Police Department (CMHAPD). The actions of Officer Griffiths which are the subject of this Complaint for Damages were undertaken in the regular course and scope of his employment as an officer with

CMHAPD. Officer Griffiths is sued in his individual capacity and, upon information and belief, resides in Cuyahoga County, Ohio where he is subject to service of this lawsuit.

## STATEMENT OF FACTS

6.

On November 13, 2020, after being shot by Officer Griffiths, 19-year-old Arthur Keith (hereinafter "Mr. Keith"), died from a gunshot wound through his back, which according to the Cuyahoga County Medical Examiner, proceeded "from back to front, rightwards, and downwards" with an exit wound located on his right chest. See *Cuyahoga County Medical Examiner's Office, Report of Autopsy*, Page 1 of 3, attached as **Exhibit 1**.

7.

This officer involved shooting incident was investigated by the Cleveland Division of Police and assigned to Detectives Diaz (#1001) and Borden (#43) of the Cleveland Homicide Unit. See *Homicide Unit Synopsis Report*, November 13, 2020, attached as **Exhibit 2**.

8.

According to Detectives Diaz and Borden, Officer Griffiths reported to them that on November 13, 2020, he received an assignment to respond to 6201 Haltnorth Walk to investigate a male in a dark colored auto that was involved in an aggravated robbery and felonious assault that occurred earlier in the week. See *Supplemental Report, Cleveland Division of Police*, February 12, 2021, attached as **Exhibit 3**.

9.

Officer Griffiths reported that when he arrived on the scene, he parked his marked patrol car near the suspect auto and approached the suspect auto when he observed a person later identified as Mr. Keith exit the auto. *Id.*

3

10.

Officer Griffiths reported after Mr. Keith exited the vehicle, he ordered Mr. Keith to show his hands, at which time he observed Mr. Keith holding a firearm in his left hand, at which time Mr. Keith raised the firearm towards him. *Id.*

11.

Officer Griffiths reported that he was in fear for his life at which time he fired his service weapon at Mr. Keith, and then Mr. Keith ran a short distance and then fell to the ground, at which point he observed a weapon lying on the ground near Mr. Griffith. *Id.*

12.

Officer Griffiths reported that while Mr. Keith was on the ground, he kicked the firearm away from him and handcuffed Mr. Keith. *Id.*

13.

Officer Griffiths reported that he was unsure how many times he fired his weapon and that everything slowed down once Mr. Keith pointed the gun at him. *Id.*

14.

Crime scene reports identified several vehicles on the scene in the parking lot at 6201 Haltnorth Walk, including a 2020 Chrysler Pacifica that was the subject of the CMHAPD dispatch to the scene. See *Supplementary Report, Cleveland Division of Police*, November 14, 2020, attached as **Exhibit 4**.

15.

Crime scene reports identified and recovered seven (7) spent cartridge casings on the scene, identified as Marker #2, #3, #4, #5, #6, #7 and #8, all of which were located near the vehicles in

the parking lot, including Mr. Keith's vehicle. *Id., see also, Crime Scene Photos,* attached as **Exhibit 5**.

16.

Crime scene reports identified and recovered in the grass where Mr. Keith fell to the ground the following items: a key fob (Marker #13), a plastic bag containing suspected marijuana (Marker #14) and swabs of suspected blood (Marker #15). *Id.,* see also*, Crime Scene Photos,* attached as **Exhibit 6**.

17.

There are no crime scene photos of a gun near the body of Mr. Keith at the location in the courtyard where he fell to the ground, or any such photos of a gun located in the path that officers reported Mr. Keith ran during this incident. See *Supplementary Report, Cleveland Division of Police*, November 14, 2020, attached as **Exhibit 7**.

18.

Crime scene obtained photos of a Glock 9mm that CMAHPD officers state was in the possession of Mr. Keith. However, this weapon is not photographed by crime scene while on the ground in the courtyard, or on the ground in the parking lot, but is photographed in the back of an unmarked CMHA police vehicle. *Id.*, Page 1; see also, *Crime Scene Photos*, attached as **Exhibit 8**.

19.

According to the *Homicide Unit Synopsis Report*, upon arrival at 6201 Haltnorth, at approximately 1638 Hours, "CMHAPD Officers triangulated the suspect's [Mr. Keith] and ordered the suspect to exit the vehicle and show his hands. Shots were fired at which time suspect

5

fled on foot southbound on Woodland Avenue Westbound around the building." See *Homicide Unit Synopsis Report*, November 13, 2020, Page 2 of 3. attached as **Exhibit 2**.

20.

According to the *Homicide Unit Synopsis Report*, Officer Griffiths and CMHAPD officer Robert Lenz engaged in a foot pursuit of Mr. Keith, but Officer Lenz returned to the suspect's vehicle to ensure there were no other occupants inside. Upon clearing the suspect's vehicle, Officer Lenz followed the path that the suspect fled in and observed Officer Griffiths returning with the suspect's weapon in his hand. *Id.*

21.

EMS arrived and transported Mr. Keith to Metro Health Medical Center where he was pronounced deceased.

22.

Cleveland Police Homicide Unit identified and interviewed witnesses to the incident, including witnesses who observed the shooting of Mr. Keith. According to police reports, when officers arrived on the scene after the shooting, there were approximately 4 to 5 people standing in front of 6201 Haltnorth Walk.

23.

According to a report from the Cleveland Police Homicide Unit, a twelve-year old juvenile witness (hereinafter **"Juvenile Witness #1"**), reported that "she and a few friends were outside of her apartment and were facing toward the parking lot of 6201 Haltnorth Walk." See *Supplementary Report, Cleveland Division of Police*, March 14, 2021, attached as **Exhibit 9**.

24.

**Juvenile Witness #1** stated that she saw a police car in the parking lot and saw Mr. Keith running and a police officer pull his gun and fire three (3) times in the direction of Mr. Keith. *Id.*

25.

**Juvenile Witness #1** stated that she heard the officer order Mr. Keith out of the car prior to the shooting but never saw Mr. Keith with a gun. *Id.*

26.

According to reports from the Cleveland Police Homicide Unit, a 15-year-old juvenile (hereinafter **"Juvenile Witness #2**) reported that he was in the courtyard with friends when he saw CMHA Police Officers approach the vehicle containing Mr. Keith in the parking lot. See *Supplementary Report, Cleveland Division of Police*, November 16, 2020, attached as **Exhibit 10**.

27.

**Juvenile Witness #2** reported that Officer Griffiths was on the driver's side of Mr. Keith's vehicle, when Mr. Keith exited from the passenger side door as the CMHA officer [Officer Griffith] had his firearm out. *Id.*

28.

**Juvenile Witness #2** reported that when Mr. Keith exited the vehicle, the CMHA officer [Officer Griffiths] was pointing his firearm at Mr. Keith, who turned away from Officer Griffiths and started to run around the front of the vehicle. *Id.*

29.

**Juvenile Witness #2** reported that he heard gunshots and the CMHA Officer [Officer Griffiths] shot Mr. Keith in the back, and that he did not see Mr. Keith with a firearm in his hand. *Id.*

30.

**Juvenile Witness #2** reported that the CMHA officers performed first aid on Mr. Keith until EMS arrived, and then EMS placed Mr. Keith on a gurney and took him to the hospital. *Id.*

31.

**Monica Hatcher** reported to the Cleveland Police Homicide Unit that she was in the parking lot when the shooting occurred, standing near the sidewalk in front of 6201 Haltnorth. See *Supplementary Report, Cleveland Division of Police*, March 14, 2021, attached as **Exhibit 11**.

32.

**Ms. Hatcher** reported that she observed Mr. Keith running from a CMHA Officer [Officer Griffiths] and heard the officer yelling at him to stop. *Id.*

33.

**Ms. Hatcher** reported that she heard three gunshots and saw Mr. Keith fall to the ground but did not see Mr. Keith with a firearm. *Id.*

34.

**Ms. Hatcher** reported that she did not see the CMHA officer [Officer Griffiths] render aid to Mr. Keith, but that he waited until other officers arrived. *Id.*

35.

According to reports from the Cleveland Police Homicide Unit, a 15-year-old juvenile (hereinafter **"Juvenile Witness #3"**) reported that he was in the courtyard with friends when he saw the CMHA Police Officers approach the vehicle containing Mr. Keith in the parking lot. See *Supplementary Report, Cleveland Division of Police*, March 14, 2021, attached as **Exhibit 12**.

36.

**Juvenile Witness #3** reported that Officer Griffiths was on the driver's side of the vehicle which contained Mr. Keith, and that she saw Mr. Keith exit the vehicle from the passenger side, at which time Officer Griffiths had his firearm out. *Id.*

37.

**Juvenile Witness #3** reported that after he saw Mr. Keith exit the vehicle on the driver's side, he then saw Mr. Keith take off running away from the CHMA officer [Officer Griffiths], who he observed shoot Mr. Keith in the back. *Id.*

38.

**Juvenile Witness #3** stated that he did not see Mr. Keith with a firearm in his hand. *Id.*

39.

On November 13, 2020, **Jahzir Milton** reported to Detective Stephanie Hunter (#626) that he was taking out the trash when he saw 3 police cars pull into the parking lot, and as he was walking back from the trash dumpster, he saw a male later identified as Mr. Keith get out of his vehicle and tried to run when the police shot him 2 times, at which point Mr. Keith ran pass his apartment and around the corner. See *Cleveland Division of Police Report*, November 13, 2020, attached as **Exhibit 13**. Milton reported to reported to Detective Hunter that he "saw everything." *Id.*

40.

**Milton** reported to News 5 Cleveland that "Arthur tried to get out the car and then he tried to run, that's when we heard five gun shots." See *Witness account contradicts police in CMHA police shooting of 19-year-old*, news5cleveland.com, December 3, 2020, attached as **Exhibit 14**.

41.

9

**Milton** reported that after Officer Griffith's shot Mr. Keith, the officer kept looking for a gun: "He just kept repeating 'he had a gun, he had a gun,' but he's on the ground the whole time, we don't see a gun." *Id.*

42.

CMHAPD officer Sgt. Paul Styles responded to the scene and stated that he approached Mr. Keith's vehicle from the driver's side and Officer Griffiths approach from the passenger side. See *Supplementary Report*, *Cleveland Division of Police*, November 16, 2020, attached as **Exhibit 15**.

43.

On December 11, 2020, Sgt. Styles reported that he heard Officer Griffiths state, "he's got a gun!" and then heard gunshots, and after a slight pause, he heard more gunshots, but did not see who was shooting. *Id.*

44.

Sgt. Styles reported that he then saw Mr. Keith run south and then west around the corner of 6201 Holtnorth Walk, and that he pursued Mr. Keith through the King Kennedy Estates, then slowed when he got to the corner of the building and peaked around the corner. *Id.* Sgt. Styles stated that he saw Mr. Keith lying prone on the ground near a tree stump and could see a black firearm lying on the ground near Mr. Keith's right hand. *Id.*

45.

Officer Lenz reported that when he arrived on the scene, he walked up to Mr. Keith's vehicle and heard Officer Griffiths yelling "drop the gun, drop the gun!" and then heard several gunshots, but does not know fired the gunshots. See *Supplementary Report*, *Cleveland Division of Police*, November 16, 2020, attached as **Exhibit 16**.

46.

Officer Lenz reported that Mr. Keith then ran south and then west through the courtyard, and that he pursued Mr. Keith along with Officer Griffiths and Sgt. Styles, and then later saw Mr. Keith laying supine on the ground in the courtyard. *Id.*

47.

Sgt. Styles further reported that he assisted Officer Griffith and Officer Lenz as they approached the 2020 Chrysler Pacifica, and that he heard Officer Griffiths yell from the front of the vehicle "drop the gun, drop the gun!" Sgt. Styles reported that he heard several gunshots but did not know who fired the gunshots. See *Supplementary Report*, *Cleveland Division of Police*, November 16, 2020, attached as **Exhibit 17**.

48.

During his career as an officer with CMHAPD, and prior to the incident that is the subject of this lawsuit, Officer Griffiths was the subject of numerous disciplinary actions by CMHAPD, for conduct in violation of CMHA rules, regulations, policies and procedures, including conduct unbecoming of an employee; abuse of sick leave; habitual absences and tardiness; insubordination to a superior officer; being disrespectful and discourteous; willfully disobeying lawful orders; and failure to achieve range proficiency.

49.

During his career as an officer with CMHAPD, and prior to the incident that is the subject of this lawsuit, Officer Griffiths had been informed during performance evaluations that he needs improvement in the areas of his work ethic, judgment/decision making, leadership, dependability, and accountability.

50.

As a direct and proximate result of the actions of Officer Griffiths, Mr. Keith suffered physical injury, pain, emotional and psychological trauma, and eventually died from the excessive deadly force, assault, and battery described above.

51.

As a further direct and proximate result of Mr. Keith's wrongful death, his survivors, next of kin and/or his heirs have suffered permanent damages, including but not limited to grief, depression, and severe emotional distress. Plaintiff has incurred medical expenses, funeral bills, and other expenses.

## COUNT I

### EXCESSIVE FORCE IN VIOLATION OF 42 U.S.C. § 1983

52.

Plaintiff re-states and re-alleges the preceding allegations of the Complaint as though fully set forth herein.

53.

Officer Griffith is a "person" under 42 U.S.C. § 1983 and during all times relevant was acting under color of law as a police officer with the Cuyahoga Metropolitan Authority Police Department (CMHAPD), which has law enforcement authority over property expressly owned, leased, or contracted by Defendant CMHA, including streets and alleys that transverse the property, and all adjoining streets and areas within 300 feet of the property line.

54.

As an officer with CMHAPD, Officer Griffiths is vested with the authority and duty to protect life and property, prevent crime, detect, arrest, prosecute offenders, preserve the public

peace, and enforce the laws of the state of Ohio and local municipalities, ordinances, as well as the policies and procedures of CMHAPD.

55.

Officer Griffiths, while acting under color of law and with the authority of CMHAPD, negligently, recklessly, and intentionally acted in a manner that deprived Mr. Keith of his constitutional rights, including his rights under the Fourth Amendment of the United States Constitution.

56.

Officer Griffiths had a duty and responsibility to carry out his law enforcement duties with a reverence for the sanctity of human life, and to use only that force which is necessary, proportional to the level of resistance, and objectively reasonable based on the totality of circumstances confronting him.

57.

Officer Griffiths had a duty and responsibility to take all reasonable measure to de-escalate an incident and reduce the likelihood or level of force. Any use of force that is not necessary, proportional, and objectively unreasonable and does not reflect reasonable de-escalation efforts, when safe and feasible to do so, is prohibited by CMHAPD.

58.

The use of force is regulated by state and federal law and is not left to the unregulated discretion of the officer, and thus use of force decisions are dictated by the actions of the resistant or combative subject, the law, CMHAPD policy, proper tactics, and training.

59.

Officer Griffiths was only authorized to use the amount of force necessary to achieve a lawful objective. Officers shall use force only as necessary, meaning only when no reasonably effective alternative to the use of force appears to exist, and then only to the degree which is reasonable to achieve the intended lawful objective.

60.

Officer Griffiths was authorized to use deadly force to prevent the escape of a fleeing suspect <u>only</u> if he reasonably believed under the circumstances that it is necessary, and where feasible, some warning has been given, and there is probable cause to believe that: (a) the suspect would pose a continuing imminent threat of serious physical harm to Officer Griffiths or others, or (b) the escape of the suspect would pose an imminent danger of death or serious physical harm to the officer or to another if the suspect is not apprehended without delay.

61.

In the State of Ohio, the preservation of human life is of the highest value, and consistent with this value, Officer Griffith was only authorized to use deadly force either to defend himself from serious injury or death, or to defend another person from serious physical injury or death.

62.

In *Tennessee v. Garner*, 471 U.S. 1 (1985), the Supreme Court held that an officer may not use deadly force to prevent the escape of a fleeing suspect unless there is probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.

63.

In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held that an objective reasonableness standard applies to a claim that a law enforcement officer has used excessive force during a seizure under the Fourth Amendment.

64.

Based on multiple eyewitness accounts, Officer Griffiths shot multiple times at Mr. Keith, who was unarmed at the time, and running away from Officer Griffiths, striking Mr. Keith in the back, and killing him.

65.

Officer Griffiths' use of deadly force during his encounter with Mr. Keith was not objectively reasonable to defend or protect himself or another person from imminent serious physical injury or death.

66.

Officer Griffiths' account of this shooting, specifically his statement that he shot Mr. Keith because he was pointing at a firearm at him, is contradicted by numerous eyewitnesses. Furthermore, none of the other officers on the scene during the incident observed the shooting, and therefore they cannot corroborate Officer Griffith's account of the shooting or the actions of Mr. Keith at the time he was shot.

67.

The actions of Officer Griffiths, specifically shooting Mr. Keith in his back while he was unarmed and running away, were in violation of Mr. Keith's right to be free from an unreasonable seizure and restraint on his liberty without due process, in violation of state and federal law, and the Fourth and Fourteenth Amendments of the United States Constitution.

68.

Officer Griffiths' actions and omissions, including his use of excessive and unreasonable deadly force against Mr. Keith, was the direct and proximate cause of the death of Mr. Keith, and thus entitles Plaintiff to recover compensatory damages for Mr. Keith's wrongful death, pursuant to R.C. 2125.02 (B), including damages for loss of support, loss of services, mental anguish, and financial losses incurred due to Mr. Keith's death, such as medical, funeral and burial expenses. Plaintiff is also entitled to recover survivorship damages for Mr. Keith's physical injuries leading to conscious pain and suffering.

## COUNT II

## SURVIVORSHIP ACTION

69.

Plaintiff re-states and re-alleges the preceding allegations of the Complaint as though fully set forth herein.

70.

As a result of this incident, Mr. Keith endured great conscious pain and suffering, anxiety, and fright.

71.

Mr. Keith filed no action for this matter during his lifetime, but under the laws of the State of Ohio, including R.C. § 2305.21, this action survives, including but not limited to the causes of action set forth in this Complaint, and the compensatory and punitive damages that may be asserted by his estate.

## COUNT III

## **WRONGFUL DEATH**

72.

Plaintiff re-states and re-alleges the preceding allegations of the Complaint as though fully set forth herein.

73.

As a direct and proximate result of Officer Griffiths' conduct as described herein, Plaintiff is entitled to recover damages under Ohio's Wrongful Death Statute, R.C. § 2125, et seq., for the wrongful death of Mr. Keith and for their loss of his services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice: for their grief, depression, and severe emotional distress; for Mr. Keith's funeral and burial expenses; and for all other harm suffered by Plaintiff, to include any other appliable damages and claims for relief requested in this Complaint.

## COUNT IV

## **LOSS OF CONSORTIUM**

74.

Plaintiff re-states and re-alleges the preceding allegations of the Complaint as though fully set forth herein.

75.

Plaintiff, in her individual capacity as the mother of Mr. Keith, claims damages for the permanent loss of the love and affection and support of her son, who died as a direct and proximate cause of the wrongful acts of Officer Griffiths.

WHEREFORE, Plaintiff prays for judgement against Officer Griffiths, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), for compensatory and punitive damages,

for an award of attorney's fees pursuant to 42 U.S.C. § 1988, together with all costs incurred herein, pre-judgment and post-judgment interest, and any other relief the court deems appropriate.

Respectfully submitted,

/s/ Robert L. Gresham
Michael L. Wright, #0067698
Stanley Jackson, #0077011
Robert L. Gresham, #0082151
THE COCHRAN FIRM - CLEVELAND
2000 Auburn Drive, Suite 200
Beachwood, Ohio 44122
(216) 333-3333
(513) 381-7922        FAX
mwright@yourohiolegalhelp.com
rgresham@yourohiolegalhelp.com
sjackson@cochranohio.com
*Attorneys for Plaintiff*

## JURY DEMAND

Now comes Plaintiff, by and through counsel, and hereby demands a trial by jury on all issues of this matter.

/s/ Robert L. Gresham
Michael L. Wright, #0067698
Stanley Jackson, #0077011
Robert L. Gresham, #0082151
*Attorneys for Plaintiff*